587 So.2d 807 (1991)
Phillip GOODMAN et ux, Plaintiffs-Appellees,
v.
Jonathan ROBERTS et ux, Defendants-Appellants.
No. 90-348.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Rehearing Denied November 13, 1991.
*808 Provosty, Sadler & de Launay, Ricky Sooter, Alexandria, for plaintiffs-appellees.
Edward Larvadain, Alexandria, for defendants-appellants.
Before FORET and DOUCET, JJ., and CULPEPPER[*], J. Pro Tem.
*809 DOUCET, Judge.
This is an appeal of a judgment rescinding the sale of a house for redhibitory defects.
In late 1983 or early 1984, the defendants-appellants, Mr. and Mrs. Jonathan Roberts, bought a house to move onto a vacant lot they owned in Alexandria, Louisiana. The house was moved and installed on the lot by Bob Johnson d/b/a/ Johnson House Moving, for a price of $3,500.00. It was repaired and refurbished by Charles D. King for $7,000. The house was inspected by the City of Alexandria and found to meet all codal requirements. The Robertses listed the property with Sands Real Estate.
Phillip and Theresa Goodman, plaintiffs-appellees, saw the house and contacted Sands Real Estate about purchasing it. They inspected the house and decided to buy it. A purchase price of $20,000 was agreed upon. The Goodmans arranged financing through Guaranty Bank. Guaranty appraised the house at $30,000. The sale was closed on April 6, 1984.
Some time after purchase, the house began to develop problems. The plumbing backed up. Doors would not close. The roof began to leak. The walls and floors warped, cracked, and buckled. The ceiling cracked. The screens fell out of the windows, and had to be taped to keep them in. The porches deteriorated. Mr. Roberts testified at trial that he first learned of these problems in March 1985, when he received a registered letter from Mr. Goodman. However, both Mr. Goodman and Christopher Brice, an officer at Guaranty who helped Mr. Goodman in this regard, testified that unregistered letters had been sent to the Robertses to inform them of the problems as early as six months after the sale.
On July 16, 1985, the Goodmans filed suit to rescind the sale and for damages alleging redhibitory vices. The matter was tried before a judge on August 21, 1987. Judgment was rendered rescinding the sale, ordering that the property be returned to the Robertses and that the Robertses return the $2,000 cash down payment, the closing costs of $500, as well as property taxes, insurance, and mortgage interest paid by the Goodmans up to the date of trial.
The defendants moved for a new trial. The motion was denied on the basis that it was not timely filed. The defendants appealed the denial and filed an exception of prescription. This court found that the motion was timely filed and remanded the case to the trial court with instructions that the trial court rule on the exception of prescription. 549 So.2d 897.
On remand the trial court overruled the exception of prescription and granted the motion for new trial. Pursuant to the new trial, the court increased the rent credit in favor of the defendants. The defendants again appeal. The plaintiffs have answered that appeal.

PRESCRIPTION
The defendants argue that the trial judge erred in denying the exception of prescription. The plaintiffs' petition was filed one year and three months after the sale.
"A suit in redhibition must be filed within one year of the date of sale unless the seller had knowledge of the vice and neglected to inform the purchaser. C.C. 2534. If the seller fails to disclose to the purchaser a known redhibitory vice at the time of the sale, he is in bad faith. This bad faith operates to suspend the running of prescription until the purchaser discovers the vice."
Jordan v. Employee Transfer Co., 509 So.2d 420, 422 (La.1987). A builder or manufacturer is presumed to know the defects of the thing he constructs. A vendor-builder of a dwelling is a manufacturer who cannot avoid the conclusive presumption that he knew the defects of the thing he has made. As a result, the running of prescription against a vendor-builder is suspended until the buyer discovers the defect. Chastant v. SBSHarolyn Park Venture, 510 So.2d 1341 (La.App. 3rd Cir.1987), writ denied, 513 So.2d 825 (La.1987). The defendants contend first that the trial court erred in finding them to be "vendor-builders." *810 Alternatively, they argue that the evidence presented at trial established that the defects complained of manifested themselves only one month after the sale.
After reviewing the record as well as the applicable law, we find no error in the trial court's conclusion that the defendants were "vendor-builders" of the house. They bought the house, moved it, installed it onto a vacant lot, and caused extensive renovations to be done. The evidence supports a finding that it was inadequacies of the installation and renovation which resulted in the defects. Under the reasoning of Truelove v. Easley, 521 So.2d 1229 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 802 and 803 (La.1988), as well as that of Chastant, supra, this is sufficient involvement with the construction and/or reconstruction to support the conclusion that the defendants were vendor-builders. As such they may be presumed to have known the vices of the house. As a consequence of this presumed knowledge, prescription was suspended until the plaintiffs discovered the defects in the house.
"This discovery is not presumed. The seller has the burden to prove by a preponderance of the evidence that the purchaser discovered the vice more than one year prior to when suit was filed. C.C. 2546; Tuminello v. Mawby [220 La. 733], 57 So.2d 666 (La.1952)."
Jordan, supra at p. 422.
The Supreme Court in Jordan further explained the burden with regard to discovery at page 423 of that opinion, as follows:
"In Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574, 577 (La. 1980), this could held, "The mere apprehension by plaintiff that `something was wrong' is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his problem ... may have been caused by acts of malpractice."
Recently, in Griffin v. Kinberger, 507 So.2d 821, 823 (La.1987), this court explicitly noted that this language in Cartwright v. Chrysler Corporation [255 La. 597, 232 So.2d 285 (1970) ], supra had been `refined' to focus on the reasonableness of a tort victim's action or inaction. The court concluded, `prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment.'
* * * * * *
'Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.'
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction."
The testimony of the plaintiffs themselves does in fact establish that some problems with the house began to manifest themselves as early as one month after the sale. However, their uncontradicted testimony is that the major defects did not reveal themselves until four months after the sale. It was at this point that the plaintiffs knew or should have known that they had a reasonable basis to pursue a claim against the defendants and at which prescription began to run. As a result the trial judge correctly denied the exception of prescription.

RECISION OF SALE
The defendants next argue that the court erred in rescinding the sale as opposed to reducing the purchase price.
"Redhibition is the avoidance of a sale because of a vice or defect in a thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed the buyer would not have purchased it, had he known of the vice. La.Civ.Code art. 2520.
`If the defect in the thing sold is such as to merely diminish its value, the finder of fact has the discretion to award merely *811 a reduction of the price. La.Civ.Code arts. 2541 and 2543.'
* * * * * *
'The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record as a whole establishes that the finding is clearly wrong.' Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Red Arrow Sales, Inc. v. Dixie Motors, Inc., 442 So.2d 570 (La.App. 1st Cir.1983)."
Gritschlag v. U.S. Home Corp., 506 So.2d 1236, 1240 (La.App. 1st Cir.1987), writ denied, 512 So.2d 1175 (La.1987). In this case, as in Gritschlag, the defendant does not contest the finding that the house contained defects. Rather, the defendants argue that the defects diminished the value of the house but did not render it useless. In support of this contention, they cite the testimony of the plaintiff, Phillip Goodman, that he had an estimate from A & B Builders to repair the house for $4,700. The plaintiff did so testify. However, Phillip W. Beard, a consulting engineer, testified that, due to the type of soil underlying the house and the deficiencies in the original installation and renovation of the house, repairs costing $21,424 would be needed to put the house in a condition which would not only make it livable again, but would prevent recurrence of the problems. According to Mr. Beard, to solve the major problem, inadequate foundation, the house would have to be removed from the lot. Thirty-six piers, six feet deep, would have to be installed as a foundation before the house could be replaced. Then extensive renovations would be required to correct the inadequacies of the original construction or renovation.
Apparently the trial judge made a decision to credit the testimony of Beard over that of other witnesses in determining that the proper remedy was recision of the sale. Such credibility evaluations are within the discretion of the finder of fact and should not be overturned absent manifest error. Where there are no documents or objective evidence contradicting the testimony of a witness, and where the testimony is not implausible on its face, the decision of the finder of fact to credit that testimony over that of other witnesses can virtually never be manifestly erroneous. Rosell v. Esco, 549 So.2d 840 (La.1989), on remand, 558 So.2d 1360 (La.App. 4th Cir. 1990), writ denied, 561 So.2d 105 (La.1990). Accordingly, we must respect the trial judge's credibility evaluation in this matter. As a result we find no error in the trial judge's decision to rescind the sale.

CREDIT FOR USE
The trial court granted the defendants a set off of $200 per month for the plaintiffs' use of the house. Defendants argue that this is inadequate. Plaintiffs, in their answer, argue that it is excessive. The only evidence as to rent presented at trial was plaintiffs' testimony that they paid $80 rent per month prior to buying the house from the defendants.
Reasonable rental for use of the house may be deducted from the amount which defendants owe the plaintiffs. The trial court was within its discretion in setting a rent of $200 even though the record did not contain direct evidence as to the rental value of the house. Drewes v. Giangrosso, 429 So.2d 198 (La.App. 1st Cir.1983).

SET OFFS
Defendants further argue that a set off should have been allowed for damages that the plaintiffs caused to the house other than ordinary wear and tear. Defendants further argue that they should receive a credit for homeowners insurance benefits received by the plaintiffs after the house was damaged by wind and flood. The record is devoid of evidence on these points. Accordingly, the trial judge did not err in failing to grant set offs for these amounts.

ATTORNEY'S FEES
Plaintiffs argue in their answer to the appeal that inadequate attorney's fees were granted. The trial court granted fees of $2,500. As a vendor-builder, the defendant is deemed to be in bad faith and liable to the buyer for attorney's fees. La. C.C. art. 2545. Besse v. Blossman, 521 *812 So.2d 570 (La.App. 3rd Cir.1988); Truelove v. Easley, supra.
"The amount of reasonable attorney's fees to be allowed addresses itself to the discretion of the court. Factors deemed worthy of consideration include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. Ray v. Superior Iron Works and Supply Co., Inc., 284 So.2d 140 (La.App. 3rd Cir. 1973), writ denied, 286 So.2d 365 (La. 1973). There is ample authority for the rule that a court may rely upon its own expertise to fix the fees of an attorney. Reynolds, Nelson, Theriot & Stahl v. Chatelain, 428 So.2d 829 (La.App. 5th Cir.1988), writ denied, 434 So.2d 1098 (La.1983)."
Snoke v. M. & M. Dodge, Inc., 546 So.2d 936, 944 (La.App. 3rd Cir.1989). After reviewing the record, we find no error in the trial court's award of attorney's fees.

MENTAL ANGUISH
Finally, plaintiffs argue that the trial court erred in failing to award damages for the mental anguish they suffered through living in a defective house. An award of damages for mental anguish is proper in a redhibition case where competently proved. The buyer has the burden of proving these damages. Snoke v. M. & M. Dodge, supra. The record contains very little evidence, if any, with regard to mental anguish. Under the circumstances, we cannot say that plaintiffs carried their burden of proof. Accordingly, we find no manifest error in the trial court's failure to award damages for mental anguish.
CONCLUSION
We find no error in the judgment rendered by the trial court. Accordingly, that judgment is affirmed. Costs of this appeal are to be paid three-quarters by defendants-appellants, and one-quarter by plaintiffs-appellees.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.